DOROTHY M. HORTON vs. DANA M. MARSTON.

Barnstable. March 7, 1967. — April 4, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

Landlord and Tenant, Seasonal letting of furnished dwelling, Landlord's liability to tenant or one having his rights. Identity. Practice, Civil, Parties.

A landlord, upon leasing a furnished cottage for a term of nearly nine months to a tenant who moved in on the day the lease was executed, impliedly covenanted that the cottage and its furnishings were then suitable for their intended use, and the landlord was liable for breach of such covenant to the tenant for injuries sustained when gas accumulated by reason of defective insulation of the oven of a gas stove and too close location of cabinets to the stove's burner exploded upon the tenant's striking a match. [326]

In an action by a tenant under a written lease against his landlord, evidence clearly identified the defendant, who did not testify at the trial, as the landlord. [326]

CONTRACT. Writ in the First District Court of Barnstable dated May 13, 1964.

The action was heard by Horrocks, J.

Philip M. Boudreau for the plaintiff.

Arthur J. McLaughlin for the defendant.

WHITTEMORE, J. The report to the Appellate Division from the First District Court of Barnstable sets out evidence tending to show the following facts: On September 4, 1962, the plaintiff signed a written lease with Dana M. Marston for cottage No. 2 in Marston's development of rental cottages. The lease was to run until the end of May, 1963. The cottage was rented with all furnishings except bed linen, including an apartment-sized gas stove. The plaintiff moved in on September 4, 1962, and used the stove from that date. It was at least ten years old. On May 8, 1963, when the plaintiff sought to light a burner on the top of the gas stove (one of three she had extinguished five to seven minutes earlier, leaving a fourth top burner and the oven ignited) an explosion occurred injuring the plaintiff. This was the first time the plaintiff had used all four top burners and the oven at the same time.

Horton *v.* Marston.

The trial judge found, with support in the evidence, including expert testimony, that "the oven . . . was insulated in a defective manner." As a result, either because much of the available oxygen had been used or because the air over the stove had become overheated, the flame of the fourth burner had been extinguished. The wall cabinets and side cabinets were "too close to the burner, closer than allowed by law." The combined effect of the defects was an accumulation of gas that exploded when the plaintiff struck a match.

The trial judge made a finding for the plaintiff, having found that the stove was not in a suitable condition for use. He ruled that there was a breach of an implied agreement that the house and its appointments were in a suitable condition for occupancy. The Appellate Division reversed the finding and held that it was error not to have ruled that the evidence required a finding for the defendant. The defendant does not contend that the defects did not exist at the time of the letting.

*Ingalls* v. *Hobbs,* 156 Mass. 348, 350, was an action by a landlord to recover for the rent of a furnished dwelling leased for the summer season. The tenant successfully defended on the ground of a breach of an implied warranty that the dwelling was fit for the intended use, the house having been infested with bugs. This court said, in respect of the renting of a dwelling for a short term ("a few days or a few weeks or months"): "Its fitness for immediate use of a particular kind, as indicated by its appointments, is a far more important element entering into the contract than when there is a mere lease of real estate. One who lets for a short term a house provided with all furnishings and appointments for immediate residence may be supposed to contract in reference to a well understood purpose of the hirer to use it as a habitation. An important part of what the hirer pays for is the opportunity to enjoy it without delay, and without the expense of preparing it for use. . . . It would be unreasonable to hold, under such circumstances, that the landlord does not impliedly agree that

what he is letting is a house suitable for occupation in its condition at the time."

In *Hacker* v. *Nitschke,* 310 Mass. 754, 756, where a beach cottage was rented for four weeks, the principle was extended to apply to an action of tort by the tenant to recover for injuries caused by a defective ladder included in the furnishings. The court noted the general rule that a landlord is not liable for defects existing at the time of letting unless they are hidden and known to the landlord and he fails to warn the tenant. The court said that the *Ingalls* case is a departure from the general rule and "should be confined within narrow limits," but that the authority of the case has not been doubted in this Commonwealth. In *Ackarey* v. *Carbonaro,* 320 Mass. 537, 539–540, a tenant recovered in tort for consequential damages resulting from injuries to the tenant's child. The *Ingalls* principle was applied to the structural condition of a piazza rail of a beach house rented furnished for a week. *Davenport* v. *Squibb,* 320 Mass. 629, 632, an action for rent, was decided on another ground, but the court recognized that the *Ingalls* case rule would apply to a three and one-half months summer rental of a furnished house.

*Littlehale* v. *Osgood,* 161 Mass. 340, 343, was an action of tort based on false representations that the house was in a good sanitary condition. The *Ingalls* case issue was not raised at the trial, and this court said, "[W]e have no occasion to consider whether the doctrine . . . would apply when a house is rented for a year."

In *Young* v. *Povich,* 121 Maine, 141, 143–145, cited by this court in the *Davenport* case (320 Mass. at 632), a tenant recovered an advance payment of rent on the ground that the furnished summer cottage, rented for eight months, was unsuitable for occupancy because of bedbugs. The court, citing the *Ingalls* case, said that the issue should not turn on a ruling that more than a certain number of months would be a "long term" and hence subject to the general rule rather than to the *Ingalls* case exception. "We think that the phrase 'for a temporary purpose' instead of the phrase 'for a short term' . . . would more definitely pre-

sent the question of fact . . . .'' The Maine court indicated that in its view the circumstances of each case should be determinative.

The Appellate Division and the defendant emphasize the statements in certain cases that the *Ingalls* case is ''limited . . . very carefully to its particular facts'' (*Bolieau* v. *Traiser,* 253 Mass. 346, 349) ; that it is a ''somewhat limited exception'' (*Chelefou* v. *Springfield Inst. for Sav.* 297 Mass. 236, 239) ; and that it ''should be confined within narrow limits'' (*Hacker* case, *supra,* 310 Mass. at 756; accord *Legere* v. *Asselta,* 342 Mass. 178, 179). See also *Gade* v. *National Creamery Co.* 324 Mass. 515, 518–519; *Bowman* v. *Realty Operators Corp.* 336 Mass. 395; and *Boothman* v. *Lux,* 349 Mass. 426, 428.

The *Ingalls* case and the *Povich* case cited English decisions, adjudicating a tenant's liability to pay rent, in which a warranty was implied where the premises were not in a fit state to be inhabited. *Smith* v. *Marrable,* 11 M. & W. 5 (infestation of bugs). *Wilson* v. *Finch Hatton,* [1877] 2 Ex. D. 336 (defective drains, stagnant, malodorous sewage under basement). *Collins* v. *Hopkins,* [1923] 2 K. B. 617 (house recently occupied by a person suffering from pulmonary tuberculosis; action by tenant to recover rent paid and for damages). See also *Edwards* v. *Etherington,* Ry. & Mood. 268 (walls so dilapidated as to be unsafe).

The *Ingalls* and *Povich* cases could be understood to stand only for affording relief in respect of rent if the tenant could not safely and reasonably have had any use of the premises in their condition as rented. But the *Hacker* case, *supra* (310 Mass. 754), and the *Ackarey* case, *supra* (320 Mass. 537), have already established that the implied warranty applies to defects that do not render the premises as a whole unusable, and that the tenant may recover resulting damages apart from any issue as to rent. See also the *Bowman* case, *supra* (336 Mass. 395), which was decided on the ground that the cause of the fire in the kitchen was conjectural. Thus it appears that the rule has already been extended beyond the particular facts of the *Ingalls* case and that the only basis for not implying a war-

ranty under the *Ingalls* principle as exemplified in our more recent cases is the length of the term.

We think that the length of the term in the case at bar was not such as to place the risk of concealed defects on the tenant. Here, as in the *Ingalls* case, an "important part of what the hirer . . . [paid for was] the opportunity to enjoy . . . [the dwelling] without delay, and without the expense of preparing it for use." We hold that the defendant impliedly covenanted on September 4, 1962, that cottage No. 2 and its furnishings were then suitable for their intended use.

We see nothing in the defendant's contention that he has not been shown to be the Dana M. Marston who rented the cottage. The defendant is named in the writ as "Dana M. Marston dba Captain Marston's Village, Main Street, Barnstable (Osterville), Massachusetts." Service was made "at the last and usual place of abode of Dana M. Marston at 'Captain Marston's Village,' Main Street, Osterville, Massachusetts." There was evidence, inter alia, as follows: "The plaintiff met . . . Dana M. Marston, also called Captain Marston, on or about September 4, 1962, at the office of 'Captain Marston's Village.'" Marston identified himself as the owner of the cottages and "showed the plaintiff through Cottage No. 2." The plaintiff signed a lease "with said Dana M. Marston." On May 13, 1963, a repairman for the Buzzards Bay Gas Co., in the presence of Dana Marston, made certain tests. The gas inspector of the town on May 10, 1963, made tests on the stove in cottage No. 2 of "Dana M. Marston's 'Captain Marston's Village,'" and thereafter "ordered Dana Marston, whom he had known for some time, to cut the overhanging shelves off as . . . this condition constituted a hazard endangering the public safety." At the trial there was no testimony from the defendant. The evidence certainly showed more than "bald identity of name." *Brockton Hosp.* v. *Cooper,* 345 Mass. 616, 617–618.

The order of the Appellate Division is reversed. Judgment for the plaintiff is to enter on the finding of the trial judge.                                    *So ordered.*